No. 23-1751

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

———————————

UNION ELECTRIC COMPANY, D/B/A AMEREN MISSOURI,

*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents*.

———————————

PETITION FOR REVIEW OF A FINAL AGENCY ACTION OF THE UNITED
STATES ENVIRONMENTAL PROTECTION AGENCY

———————————

**RESPONDENTS' OPPOSED MOTION TO TRANSFER THE PETITION
FOR REVIEW TO THE D.C. CIRCUIT OR DISMISS BASED ON
IMPROPER VENUE**

———————————

|  |  |
|---|---|
|  | TODD KIM |
|  | *Assistant Attorney General* |
| *Of Counsel:* | |
| ROSEMARY HAMBRIGHT KABAN | JIN HYUNG LEE |
| DANIEL P. SCHRAMM | MIRANDA M. JENSEN |
| *Office of the General Counsel* | *U.S. Department of Justice* |
| *U.S. Environmental Protection* | *Environment and Natural Resources* |
| *Agency* | *Division* |
| *Washington, DC* | *P.O. Box 7611* |
| | *Washington D.C. 20044-7611* |

# TABLE OF CONTENTS

TABLE OF CONTENTS........................................................................ i

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION ..................................................................................1

BACKGROUND .....................................................................................2

    I.     National Ambient Air Quality Standards...............................2

    II.    The Clean Air Act's Venue Provision ..................................4

    III.   EPA's Disapproval of SIPs Addressing the Good Neighbor Provision for the 2015 Ozone NAAQS.................................5

ARGUMENT ..........................................................................................8

    I.     The Final Rule Is Nationally Applicable. ............................9

    II.    EPA Properly Made and Published a Reasonable Finding that the Final Rule Is Based on a Determination of Nationwide Scope or Effect. ...................................................................14

CONCLUSION......................................................................................20

CERTIFICATES OF COMPLIANCE....................................................21

CERTIFICATE OF SERVICE ..............................................................22

Appellate Case: 23-1751    Page: 2    Date Filed: 04/17/2023  Entry ID: 5265720

# TABLE OF AUTHORITIES

## CASES

*ABF Freight Sys., Inc. v. NLRB*,
   510 U.S. 317 (1993) ..................................................................................13, 14

*ATK Launch Sys., Inc. v. EPA*,
   651 F.3d 1194 (10th Cir. 2011) ...........................................................4, 9, 10, 12

*Cedar Falls Utils. v. EPA*,
   No. 16-4504 (8th Cir. Feb. 22, 2017) ........................................................9, 10, 15

*Chevron U.S.A. Inc. v. EPA*,
   45 F.4th 380 (D.C. Cir. 2022) ...................................................................................9

*EME Homer City Generation, L.P. v. EPA*,
   795 F.3d 118 (D.C. Cir. 2015) ..................................................................................5

*EPA v. EME Homer City Generation, L.P.*,
   572 U.S. 489 (2014) ..............................................................................................3, 5

*Gen. Motors Corp. v. United States*,
   496 U.S. 530 (1990) ...................................................................................................3

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) .................................................................................................14

*Michigan v. EPA*,
   213 F.3d 663 (D.C. Cir. 2000) ..................................................................................5

*Midwest Ozone Grp. v. EPA*,
   61 F.4th 187 (D.C. Cir. 2023) ...................................................................................5

*Nat'l Parks Conservation Ass'n v. McCarthy*,
   816 F.3d 989 (8th Cir. 2016) ..........................................................................4, 9, 11

Appellate Case: 23-1751    Page: 3    Date Filed: 04/17/2023 Entry ID: 5265720

*Nebraska v. EPA*,
12 F.3d 662 (8th Cir. 2016) ...............................................................11

*New York v. EPA*,
781 F. App'x 4 (D.C. Cir. 2019) ...........................................................5

*NRDC v. EPA*,
512 F.2d 1351 (D.C. Cir. 1975) ...........................................................13

*NRDC v. Thomas*,
838 F.2d 1224 (D.C. Cir. 1988) ...........................................................12

*RMS of Ga., LLC v. EPA*,
-- F.4th --, 2023 WL 2925109 (11th Cir. Apr. 13, 2023) ......................9, 12

*Sierra Club v. EPA*,
47 F.4th 738 (D.C. Cir. 2022) ..........................................................16, 17

*S. Ill. Power Coop. v. EPA*,
863 F.3d 666 (7th Cir. 2017) .....................................................10, 11, 12

*Texas v. EPA*,
No. 10-60961, 2011 WL 710598 (5th Cir. Feb. 24, 2011) .....................15

*Westar Energy v. EPA*,
608 F. App'x 1 (D.C. Cir. 2015) ...........................................................5

*W. Va. Chamber of Comm. v. Browner*,
No. 98-1013, 1998 WL 827315 (4th Cir. Dec. 1, 1998) ........................10

*WildEarth Guardians v. EPA*,
751 F.3d 649 (D.C. Cir. 2014) .............................................................14

*Wisconsin v. EPA*,
938 F.3d 303 (D.C. Cir. 2019) .............................................................5

**STATUTES**

42 U.S.C. §§ 7401-7671q .....................................................................1

iii

42 U.S.C. § 7401(b)(1)......................................................................2, 3

42 U.S.C. § 7409(b)(1)..........................................................................3

42 U.S.C. § 7410(a)(1)......................................................................1, 3, 5

42 U.S.C. § 7410(a)(2)(D)(i)(I) ..........................................................1, 3

42 U.S.C. § 7410(c)(1)............................................................................4

42 U.S.C. § 7410(k)(3)...........................................................................4

42 U.S.C. § 7607(b)(1)............................................... 2, 4, 5, 7, 8, 9, 12, 13, 15, 16

**FEDERAL REGISTER**

76 Fed. Reg. 48208 (Aug. 8, 2011)........................................................5

80 Fed. Reg. 65292 (Oct. 26, 2015)........................................................5

81 Fed. Reg. 74504 (Oct. 26, 2016)........................................................6

86 Fed. Reg. 23054 (Apr. 30, 2021) .......................................................6

87 Fed. Reg. 9798 (Feb. 22, 2022) .........................................................7

88 Fed. Reg. 9336 (Feb. 13, 2023) .......... 1,2, 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16

Appellate Case: 23-1751     Page: 5     Date Filed: 04/17/2023 Entry ID: 5265720

## INTRODUCTION

Because air pollutants heed no state boundaries, the Clean Air Act ("CAA" or the "Act"), 42 U.S.C. §§ 7401-7671q, requires states to ensure that their emissions do not significantly contribute to the air quality problems of other states (the "Good Neighbor Provision"), *id.* § 7410(a)(2)(D)(i)(I). States submit plans addressing the Good Neighbor Provision to the U.S. Environmental Protection Agency for review, and those plans may be approved only if they comply with the provision's requirements. *Id.* § 7410(a)(1), (k)(3). For the latest ozone air quality standards, EPA evaluated each state's plan to address the Good Neighbor Provision, reasonably determined that 21 states' plans failed to comply with the Good Neighbor Provision, and issued a final rule disapproving them. Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9336, 9338 (Feb. 13, 2023) ("Final Rule").

Union Electric Company, d/b/a Ameren Missouri ("Petitioner") petitioned for review of the Final Rule in this Court. Respondents U.S. Environmental Protection Agency and Michael S. Regan, Administrator of the U.S. Environmental Protection Agency (collectively, "EPA"), move to transfer the petition for review to the D.C. Circuit or, alternatively, dismiss for improper venue.

Because this is a final action issued under the CAA, the Act's circuit-selection provision, *id.* § 7607(b)(1), determines the proper venue for petitions for review of the Final Rule. Under § 7607(b)(1), petitions for review of actions that are "nationally applicable" or that EPA found and published are based on determinations of "nationwide scope or effect" may be filed only in the D.C. Circuit. *Id.*

The Final Rule may be challenged only in the D.C. Circuit. To address the nationwide problem of interstate pollution, EPA, in the same action, applied a uniform national approach to evaluate each state's plan and ensure equity among states. The Final Rule is plainly "nationally applicable." Alternatively, EPA expressly found and published that the Final Rule is based on a determination of "nationwide scope or effect," and that finding is entitled to deference. Accordingly, the petition for review of the Final Rule was improperly filed in this Court and must be dismissed or transferred to the D.C. Circuit.[1]

## BACKGROUND

### I. National Ambient Air Quality Standards

The Clean Air Act seeks to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare." 42 U.S.C.

---

[1] Based on discussions with Petitioner's counsel, EPA's counsel expects Petitioner will file an opposition to this motion.

2

§ 7401(b)(1). To that end, the Act controls air pollution through a system of shared federal and state responsibility. *See Gen. Motors Corp. v. United States*, 496 U.S. 530, 532 (1990). The Act directs EPA to set National Ambient Air Quality Standards ("NAAQS") for widely occurring pollutants, including ozone. The NAAQS establish permissible concentrations of those pollutants in the ambient air. 42 U.S.C. § 7409(b)(1). Within three years after the promulgation or revision of a NAAQS, each state must prepare a state implementation plan ("SIP") for EPA's review, "which provides for the implementation, maintenance, and enforcement" of the NAAQS within the state. *Id.* § 7410(a)(1).

SIPs addressing new or revised NAAQS must, among other requirements, comply with the Good Neighbor Provision and prohibit emissions from within the state that "contribute significantly to nonattainment" or "interfere with maintenance" of the NAAQS in other states. *Id.* § 7410(a)(2)(D)(i)(I). The Good Neighbor Provision addresses the plain fact that air pollutants do not heed state boundaries. Often—and especially in the case of ozone—pollutants generated by upwind sources cross multiple state boundaries, leaving downwind states to bear the brunt of addressing their states' unsafe air quality resulting from another states' emissions. *EPA v. EME Homer City Gen., L.P.*, 572 U.S. 489, 496 (2014); Final Rule, 88 Fed. Reg. at 9339-40.

3

If a SIP submission does not comply with the Good Neighbor Provision, EPA may not approve it. 42 U.S.C. § 7410(k)(3). Instead, it must disapprove the submission and promulgate a federal plan to fill the gaps in the SIP. *Id.* § 7410(c)(1).

## II. The Clean Air Act's Venue Provision

When a petitioner seeks review of an EPA final action taken pursuant to the CAA, such as a SIP disapproval, 42 U.S.C. § 7607(b)(1) makes venue exclusive in a single court of appeals. To determine which circuit court, the Act classifies final actions into three categories. First, a challenge to a "nationally applicable" EPA final action "may be filed only in the" D.C. Circuit. *Id.* Second, a petition for review of an EPA final action "which is locally or regionally applicable may be filed only in the" court of appeals for the appropriate regional circuit. *Id.* Third, if, however, the locally or regionally applicable action "is based on a determination of nationwide scope or effect and if in taking such action the Administrator [of EPA] finds and publishes that such action is based on such a determination," then any petition for review "may be filed only in the" D.C. Circuit. *Id.*; *see also see Nat'l Parks Conservation Ass'n v. McCarthy*, 816 F.3d 989, 993 (8th Cir. 2016); *ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1196-97 (10th Cir. 2011). Thus, Congress, which has plenary authority to determine venue in the inferior federal courts, determined in § 7607(b)(1) to assign venue to challenges to EPA actions

4

taken under the CAA based exclusively on the nature of EPA's "final action." *See* 42 U.S.C. § 7607(b)(1).

## III. EPA's Disapproval of SIPs Addressing the Good Neighbor Provision for the 2015 Ozone NAAQS

On October 1, 2015, EPA revised the ozone NAAQS, lowering the permissible concentration of ozone in the ambient air. National Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65292 (Oct. 26, 2015) ("2015 ozone NAAQS"). This revision in turn required each state to submit a SIP within three years to implement, attain, and enforce the 2015 ozone NAAQS. *See* 42 U.S.C. § 7410(a)(1). To evaluate whether the SIP submissions covered by the Final Rule met states' obligations under the Good Neighbor Provision, EPA reviewed each submission using a 4-step interstate transport framework.

EPA has used iterations of the same 4-step framework to evaluate compliance with the Good Neighbor Provision for prior ozone NAAQS.[2] *See, e.g.,* Federal Implementation Plans: Interstate Transport of Fine Particulate Matter and Ozone and Correction of SIP Approvals, 76 Fed. Reg. 48208 (Aug. 8, 2011)

---

[2] Additionally, the Supreme Court and D.C. Circuit have reviewed and upheld this framework as being consistent with the requirements of the Good Neighbor Provision. *EME Homer City Gen., L.P.,* 572 U.S. 489; *Midwest Ozone Grp. v. EPA*, 61 F.4th 187 (D.C. Cir. 2023); *Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019); *New York v. EPA*, 781 F. App'x 4 (D.C. Cir. 2019); *EME Homer City Gen., L.P. v. EPA*, 795 F.3d 118 (D.C. Cir. 2015); *Westar Energy, Inc. v. EPA*, 608 F. App'x 1, 3 (D.C. Cir. 2015); *see also Michigan v. EPA*, 213 F.3d 663 (D.C. Cir. 2000).

Appellate Case: 23-1751     Page: 10     Date Filed: 04/17/2023 Entry ID: 5265720

(addressing the 1997 ozone and 2006 fine particulate matter NAAQS); Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS, 81 Fed. Reg. 74504 (Oct. 26, 2016) (addressing the 2008 ozone NAAQS); Revised CSAPR Update for the 2008 Ozone NAAQS, 86 Fed. Reg. 23054 (Apr. 30, 2021) (addressing the 2008 ozone NAAQS). EPA applies this "nationally uniform" approach for evaluating each state's impact on downwind states' air quality because addressing interstate transport of ozone requires national consistency to avoid inequitable results among states. Final Rule, 88 Fed. Reg. at 9337-38, 9339-40.

The 4-step transport framework proceeds as follows: (1) identify nonattainment and maintenance "receptors," which are air quality monitoring sites that are projected to have problems attaining or maintaining the NAAQS, respectively; (2) identify upwind states that impact air quality problems in downwind states sufficiently that the states are considered "linked"; (3) identify any necessary emissions reductions to eliminate each upwind state's significant contribution to nonattainment or interference with maintenance of the NAAQS at the locations identified in Step 1; and (4) adopt permanent and enforceable measures needed to achieve those emissions reductions. *Id.* at 9338. In applying this framework to the covered SIPs, EPA also gave full consideration to any alternative approach states proposed in their submissions and evaluated them with an eye to ensuring national consistency. *Id.* at 9338, 9381.

Appellate Case: 23-1751     Page: 11     Date Filed: 04/17/2023 Entry ID: 5265720

To evaluate SIP submissions for the 2015 ozone NAAQS under this 4-step framework, EPA relied on "a common core of nationwide policy judgments and technical analysis concerning the interstate transport of pollutants throughout the continental U.S." to identify nonattainment and maintenance receptors and quantify upwind states' contributions to ozone air quality problems downwind. *See id.* at 9380. Upon evaluation, EPA proposed to disapprove SIP submissions from 23 states, including Missouri, for failure to meet the Good Neighbor Provision, and ultimately finalized its disapproval for 21 states that span eight of the ten EPA Regions and ten federal judicial circuits in its Final Rule. *Id.* at 9337. In the Final Rule, EPA stated that under § 7607(b)(1), any petition for judicial review must be filed in the D.C. Circuit because the rule is nationally applicable, or, in the event a court determined the Final Rule to be locally or regionally applicable, because EPA made and published a finding that the Final Rule is based on a determination of nationwide scope or effect. *Id.* at 9380.[3]

On April 13, 2023, Petitioner petitioned for review of the Final Rule. *See* Mo. Pet., ECF Doc. No. 5265074. Thus far, Arkansas, Southwestern Electric

---

[3] In proposing to disapprove Missouri's SIP, EPA previewed that it anticipated its final action would be nationally applicable, or, to the extent the final action was regionally or locally applicable, would be based on a determination of nationwide scope or effect within the meaning of § 7607(b)(1). Air Plan Disapproval; Missouri Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 87 Fed. Reg. 9533, 9545 & n.39 (Feb. 22, 2022).

7

Power Company, and Missouri have petitioned for review of the same Final Rule in this Court,[4] and petitions for review of the Final Rule have also been filed in the Fifth, Sixth, and Tenth Circuits[5] and EPA has filed similar motions to transfer to the D.C. Circuit or dismiss those petitions, as well.

## ARGUMENT

The CAA's venue provision is unambiguous—when a petitioner seeks review of a final action that is "nationally applicable," or a final action that is locally or regionally applicable but for which EPA makes and publishes a finding that the action is based on a determination of "nationwide scope or effect," it must bring its challenge in the D.C. Circuit. 42 U.S.C. § 7607(b)(1). Accordingly, this Court is not the proper forum for this petition for review. The Final Rule is "nationally applicable," and even if the Court concludes it is not, EPA made and

---

[4] Petition for Review, *Arkansas v. EPA*, No. 23-1320 (8th Cir. Feb. 16, 2022); Petition for Review, *Sw. Elec. Power Co. v. EPA*, No. 23-1765 (8th Cir. Apr. 14, 2022); Petition for Review, *Missouri v. EPA*, No. 23-1719 (8th Cir. Apr. 13, 2022).

[5] *See* Petition for Review, *Texas v. EPA*, No. 23-60069 (5th Cir. Feb. 14, 2023); Petition for Review, *Kentucky v. EPA*, No. 23-3216 (6th Cir. Mar. 13, 2023); Petition for Review, *Ky. Energy & Env't Cabinet v. EPA*, No. 23-3225 (6th Cir. Mar. 17, 2023); Petition for Review, *Pacificorp v. EPA*, No. 23-9512 (10th Cir. Feb. 23, 2023); Petition for Review, *Utah Associated Mun. Power Sys. v. EPA*, No. 23-9520 (10th Cir. Mar. 15, 2023); Petition for Review, *Oklahoma v. EPA*, No. 23-9514 (10th Cir. Mar. 2, 2023); Petition for Review, *Okla. Gas & Elec. Co.*, No. 23-9521 (10th Cir. Mar. 16, 2023); Petition for Review, *Wyoming v. EPA*, No. 23-9529 (10th Cir. Apr. 5, 2023); Petition for Review, *PacifiCorp v. EPA*, No. 23-9531 (10th Cir. Apr. 7, 2023).

Appellate Case: 23-1751    Page: 13    Date Filed: 04/17/2023 Entry ID: 5265720

published a finding that the Final Rule is "based on a determination of nationwide scope or effect." *Id.* Therefore, this petition should be transferred[6] to the D.C. Circuit or dismissed[7] because this Court is not the proper forum.

## I.    The Final Rule Is Nationally Applicable.

A petition for review that challenges a "nationally applicable" EPA final action under the CAA may be filed "*only* in the United States Court of Appeals for the District of Columbia." 42 U.S.C. § 7607(b)(1) (emphasis added); *see also Nat'l Parks Conservation Ass'n*, 816 F.3d at 993; *ATK Launch Sys.*, 651 F.3d at 1196-97. Whether an action is "nationally applicable" is a narrow inquiry based on "the face of the rule, rather than its practical effect." *ATK Launch Sys.*, 651 F.3d at 1197. The inquiry turns on the nature of the agency action, not the nature of a petitioner's challenge. *Id.*; *see also RMS of Ga., LLC v. EPA*, -- F.4th --, 2023 WL 2925109, *3-4 (11th Cir. Apr. 13, 2023) (joining all other circuits that have decided this issue and holding that the court "look[s] to the face of the challenged

---

[6] If the Court concludes that the D.C. Circuit is the proper forum for this petition for review, it may transfer the petition. *See ATK Launch Sys.*, 651 F.3d at 1196-97 n.1; *Cedar Falls Utils. v. EPA*, No. 16-4504, ECF Doc. No. 4503949 (8th Cir. Feb. 22, 2017).

[7] Regardless of whether the circuit-selection provisions in § 7607(b)(1) are jurisdictional, this Court may dismiss the petition. *See Chevron U.S.A. Inc. v. EPA*, 45 F.4th 380, 382 (D.C. Cir. 2022).

9

EPA action," not the "nature of the petition for review" when determining whether an action is nationally applicable (quotation omitted)).

On its face, the Final Rule is nationally applicable. The Final Rule applies a uniform and nationally consistent approach to plans submitted by states across the country, disapproving SIPs from 21 states throughout eight of the ten EPA Regions and ten federal judicial circuits. Final Rule, 88 Fed. Reg. at 9380; *Cedar Falls Utils. v. EPA*, No. 16-4504, ECF Doc. No. 4491884, at 9 (8th Cir. Jan. 19, 2017) (stating that the challenged action is one that applied "a single regulatory interpretation and uniform methodology throughout 37 states and the District of Columbia for determining linkages between upwind emissions and downwind receptors pursuant to the Good Neighbor Provision"); *id.*, ECF Doc. No. 4503949 (8th Cir. Feb. 22, 2017) (transferring petition for review of challenged action to the D.C. Circuit).[8]

---

[8] *See also, e.g.*, *ATK Launch Sys.*, 651 F.3d at 1200 (transferring challenge to an action designating portions of 18 states as failing to comply with a NAAQS because it employed a single uniform regulatory approach across many states nationwide); *S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 671 (7th Cir. 2017) (transferring challenge to an action "of broad geographic scope containing air quality attainment designations covering 61 geographic regions across 24 states," which was "promulgated pursuant to a common, nationwide analytical method"); *W. Va. Chamber of Comm. v. Browner*, No. 98-1013, 1998 WL 827315, at *6-7 (4th Cir. Dec. 1, 1998) (transferring challenge to an action finding that 22 states' SIPs were inadequate because EPA applied a "common legal interpretation" and common analysis to its decision).

10

As previously held by this Court, and by other regional circuits, the D.C. Circuit is the only appropriate venue to challenge the Final Rule. EPA employed its "nationally consistent 4-step interstate transport framework" to evaluate each state's obligations under the Good Neighbor Provision for the 2015 ozone NAAQS. Final Rule, 88 Fed. Reg. at 9380. EPA explained that ozone transport presents a "collective contribution" challenge in which many smaller contributors across a broad region combine to generate a downwind air quality problem. *Id.* at 9340, 9342. Given the "interdependent nature of interstate pollution transport," EPA applied "a uniform legal interpretation and common, nationwide analytical methods," *id.*, and employed "a consistent set of policy judgments across all states for purposes of evaluating interstate transport obligations," *id.* at 9339. Even when EPA evaluated an individual state's arguments for the use of alternative approaches or data, it did so "with an eye to ensuring national consistency and avoiding inconsistent or inequitable results among upwind states . . . and between upwind and downwind states." *Id.* at 9381. Because the Final Rule applies a uniform methodology and legal interpretation to SIP submissions across a vast

11

geographic area, the rule is nationally applicable.[9]  *See supra* n.8 & accompanying text.

It makes no difference that Petitioner purports to challenge the effects of the Final Rule only as applied to Missouri's SIP.  Mo. Pet. at 2.  To reiterate, the question here is whether the action itself is nationally applicable, not whether the nature and scope of the arguments raised or relief sought by a petitioner are nationally applicable.  *See ATK Launch Sys.*, 651 F.3d at 1198-99; *RMS of Ga.*, 2023 WL 2925109 at *3-4; *see also S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 668 (7th Cir. 2017) (holding that venue is proper in the D.C. Circuit for a challenge to a nationally applicable rule despite the localized nature of the petition for review).  A contrary approach for what constitutes an action of "national applicability" would needlessly complicate the venue analysis and create difficult line-drawing problems.  *See NRDC v. Thomas*, 838 F.2d 1224, 1249 (D.C. Cir. 1988) (rejecting argument that the de facto scope of regulation is controlling for purposes of determining venue under § 7607(b)(1) and noting that, otherwise, the "choice of the correct forum might raise complex factual and line-drawing problems," which

---

[9] The broad scope of this action (affecting 21 states nationwide) makes it easily distinguishable from other challenged actions that this Court has declined to transfer to the D.C. Circuit.  *Cf. Nat'l Parks Conservation Ass'n*, 816 F.3d at 992-93, 989 (addressing an action affecting only Minnesota); *Nebraska v. EPA*, 812 F.3d 662, 666, 669 (8th Cir. 2016) (addressing an action affecting only Nebraska).

Appellate Case: 23-1751     Page: 17     Date Filed: 04/17/2023 Entry ID: 5265720

would be "a complication of the jurisdictional test [that] would waste time and serve little purpose").  Even if the nature of Petitioner's challenge were relevant to the question of forum (which it is not), the merits arguments that Petitioner could make in this case would be inextricably intertwined with arguments applicable to challenges to all other SIP disapprovals in the Final Rule because the disapprovals were based on a common EPA rationale and methodology.  *See infra* n.10 (citing several examples from the Final Rule where EPA disapproved SIP submissions based on the same rationale).

At bottom, by filing the petition for review in this Court, Petitioner invites multiple circuits to review concurrently the merits of the same legal interpretation, policy decisions, and analytical methodology that EPA applied in a consistent way, in a single agency action, to SIPs across the United States.  In doing so, courts may well reach inconsistent outcomes on matters of interstate pollution where the imperative for consistent treatment of states is particularly compelling.  *See infra* Argument II (explaining that the concurrent petitions for review of the Final Rule in other regional circuits raise a high risk of inconsistent outcomes).  This is precisely the result that Congress sought to avoid in enacting § 7607(b)(1).  *See NRDC v. EPA*, 512 F.2d 1351, 1357 (D.C. Cir. 1975) (explaining that by vesting the D.C. Circuit with exclusive review of nationally applicable actions, Congress

13

sought "to ensure uniformity in decisions concerning issues of more than purely local or regional impact").

In sum, the Final Rule is nationally applicable and challenges to the rule may be filed only in the D.C. Circuit.

## II. EPA Properly Made and Published a Reasonable Finding that the Final Rule Is Based on a Determination of Nationwide Scope or Effect.

Even if this Court concludes that the Final Rule is locally or regionally applicable, Petitioner's petition for review must nonetheless be transferred or dismissed because EPA made and published an unambiguous finding that the Final Rule is based on a determination of "nationwide scope or effect" under § 7607(b)(1). Final Rule, 88 Fed. Reg. at 9380-81. EPA's decision to make and publish a finding that this action is based on a determination of nationwide scope or effect is well within its discretion as a policy choice and was reasonable. *See ABF Freight Sys. Inc. v. NLRB*, 510 U.S. 317, 324 (1993) ("When Congress expressly delegates to an administrative agency the authority to make specific policy determinations, courts must give the agency's decision controlling weight unless it is arbitrary, capricious, or manifestly contrary to the statute." (internal quotation marks and citation omitted)); *Sierra Club v. EPA*, 47 F.4th 738, 745

14

(D.C. Cir. 2022).  As such, the substance of EPA's determination is entitled to significant deference.[10]

Here, EPA made and published such a finding with robust support.  As part of its determination, EPA found that the Final Rule is based on a "common core of nationwide policy judgments and technical analysis concerning the interstate transport of pollutants throughout the continental U.S," which involved applying "the same, nationally consistent 4-step interstate transport framework for assessing obligations for the 2015 ozone NAAQS that it has applied in other nationally applicable rulemakings."  Final Rule, 88 Fed. Reg. at 9380.  When states, including Missouri, argued for the use of alternative approaches or datasets, EPA evaluated them "with an eye to ensuring national consistency and avoiding inconsistent or

---

[10] EPA's determination is akin to other determinations that Congress leaves to an agency's broad discretion, such as the denial of a rulemaking petition, and merits considerable deference.  *Cf., e.g.*, *WildEarth Guardians v. EPA*, 751 F.3d 649, 651 (D.C. Cir. 2014) (discussing *Massachusetts v. EPA*, 549 U.S. 497 (2007)).

Appellate Case: 23-1751     Page: 20     Date Filed: 04/17/2023 Entry ID: 5265720

inequitable results." [11] *Id.* at 9381.  Because EPA made a finding that the Final

Rule is based on a determination of nationwide scope or effect under § 7607(b)(1)

and published this finding in the Final Rule and the *Federal Register*, the proper

venue for Petitioner's challenge is the D.C. Circuit. [12]  *See Cedar Falls Utils.*, No.

16-4504, ECF Doc. No. 4491884, at 16  (stating that venue for the challenged

action is proper in the D.C. Circuit under the nationwide-scope-or-effect category

because EPA made an explicit and unambiguous finding that the challenged action

is based on a determination of nationwide scope or effect and published that

determination); *id.*, ECF Doc. No. 4503949 (transferring petition for review of

challenged action to the D.C. Circuit).

---

[11] The Final Rule is replete with examples where EPA's bases for disapproving the SIP submissions had nationwide scope or effect.  *See, e.g.*, Final Rule, 88 Fed. Reg. at 9372 (finding legally and technically inadequate the argument from Alabama, Arkansas, Kentucky, Michigan, Mississippi, Nevada, and Oklahoma that guidance for the Prevention of Significant Deterioration permitting program is applicable to the Good Neighbor Provision); *id.* at 9378 (finding legally inadequate the arguments related to international emissions and relative contribution from Arkansas, California, Illinois, Indiana, Kentucky, Michigan, Missouri, Ohio, Utah, and West Virginia); *id.* at 9354-60 (finding common analytic problems with the reliance on back trajectories to discount linkages by Alabama, Arkansas, California, Indiana, Kentucky, Louisiana, Texas, and West Virginia).

[12] EPA's decision to make and publish (or not) a finding that an action is based on a determination of nationwide scope or effect is committed to agency discretion and unreviewable.  *Sierra Club*, 47 F.4th at 745.  Therefore, any argument regarding EPA's prior decisions to make and publish such findings (or not) in other actions may not be evaluated.

This outcome promotes the principles underlying § 7607(b)(1) and reflects Congress's goal of "centraliz[ing] review of national SIP issues in the D.C. Circuit" to ensure uniformity and avoid inconsistent results. *See, e.g.*, *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *4 (5th Cir. Feb. 24, 2011) (concluding that "Congress intended the D.C. Circuit to review matters on which national uniformity is desirable" as a means to take advantage of the D.C. Circuit's "administrative law expertise" and facilitate "the orderly development of the basic law under the Act" and because "[c]entralized review of national issues is preferable to piecemeal review of national issues in the regional circuits, which risks potentially inconsistent results" (citations and internal quotation marks omitted)). As detailed above, national uniformity is especially important here because of the interdependent nature of interstate pollution transport, the national interpretation of the Good Neighbor Provision, the common core of nationwide policy judgments and technical analyses that EPA applied in evaluating the submitted SIPs, and the high risk of inequitable results among upwind states and between upwind and downwind states should litigation proceed in multiple regional circuits. Final Rule, 88 Fed. Reg. at 9380-81.

Indeed, the concurrent petitions for review of the Final Rule in separate actions in this Court as well as in the Fifth, Sixth, and Tenth Circuits illustrate the imminent risk of inconsistent results if these cases are not all transferred to the

17

D.C. Circuit or dismissed.[13]  In the Final Rule, EPA disapproved SIPs based on a determination that has nationwide scope or effect.  *See, e.g.*, *supra* n.11. Consequently, these petitions require multiple circuit courts to evaluate the same question—whether EPA acted unlawfully in resolving similar or even identical arguments raised by multiple states about how to address the problem of interstate pollution transport.  In fact, the State of Utah and the petitioners in the Fifth Circuit broadly make the same arguments in their respective motions to stay the Final Rule pending review in their regional circuit courts.  *Compare* Utah Stay Mot., No. 23-9509, ECF Doc. No. 010110823083, at 12-21 (10th Cir. Mar. 7, 2023) (arguing that EPA exceeded its authority by rejecting Utah's methodology and that EPA arbitrarily and capriciously rejected Utah's "weight-of-evidence" approach for determining whether Utah was linked to downwind states) *with* Tex. Indus. Stay Mot., No. 23-60069, ECF Doc. No. 32-1, at 13-16 (5th Cir. Mar. 3, 2023) (arguing that EPA exceeded its authority by rejecting Texas's methodology and arbitrarily and capriciously rejected Texas's "weight-of-evidence" approach for determining whether Texas was linked to downwind states).  This high risk of inconsistent results on matters that pertain to interstate pollution problems implicating SIPs from 21 states and downwind pollution impacts that span coast to coast bolsters

---

[13] *See supra* n.5.  As stated above, EPA moved to transfer or dismiss these petitions as well.

18

EPA's finding that the Final Rule is based on a determination of nationwide scope or effect.

Because EPA made and published a finding that the Final Rule is based on a determination of nationwide scope or effect, the Final Rule may be reviewed only by the D.C. Circuit.

Appellate Case: 23-1751    Page: 24    Date Filed: 04/17/2023 Entry ID: 5265720

## CONCLUSION

For the foregoing reasons, the petition for review of the Final Rule should be transferred to the D.C. Circuit or dismissed for improper venue.

Respectfully submitted,

TODD KIM
Assistant Attorney General

Of Counsel:

ROSEMARY HAMBRIGHT KABAN
DANIEL P. SCHRAMM
U.S. Environmental Protection Agency
Office of General Counsel
Washington, DC

*/s/ Miranda M. Jensen*
MIRANDA M. JENSEN
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 598-3071
miranda.jensen@usdoj.gov

April 17, 2023

20

# CERTIFICATES OF COMPLIANCE

I hereby certify that this motion complies with the requirements of Fed. R. App. P. 27(d)(2)(A) because it contains 4,409 words according to the count of Microsoft Word, excluding the parts of the motion exempted by Fed. R. App. P. 32(f), and therefore is within the word limit of 5,200 words.

I further certify that this motion complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally-spaced font, and is double-spaced, except for headings, block quotes, and footnotes.


Dated: April 17, 2023                    */s/ Miranda M. Jensen*
                                          MIRANDA M. JENSEN

Appellate Case: 23-1751    Page: 26    Date Filed: 04/17/2023 Entry ID: 5265720

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing EPA's Motion to Transfer the Petition for Review to the D.C. Circuit or Dismiss Based on Improper Venue on counsel for Petitioner via email on April 14, 2023 per agreement of counsel. This motion will also be served on all registered counsel through the Court's electronic filing system (CM/ECF).

Dated: April 17, 2023

*/s/ Miranda M. Jensen*
MIRANDA M. JENSEN